IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JERRY O'NEIL | CV 19-140-M-DLC-KLD |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATIONS |
| KURT STEELE, in his capacity as Forest Supervisor for the Flathead National Forest; and the UNITED STATES FOREST SERVICE, a federal agency, | |
| Defendants. | |

This matter comes before the Court on cross-motions for summary judgment filed in this action by Plaintiff Jerry O'Neil and Defendants Kurt Steele and the United States Forest Service ("Federal Defendants"). (Doc. 43.)

I.    Procedural History

O'Neil, who is proceeding pro se, filed his original Complaint on August 22, 2019, and filed his Amended Complaint on November 7, 2019. (Docs. 1, 6). Federal Defendants filed the Administrative Record on December 18, 2020. (Doc. 35.) O'Neil filed his Motion for Summary Judgment on March 8, 2021. (Doc. 43.) Federal Defendants filed their Cross-Motion for Summary Judgment on April 5, 2021. (Doc. 44.) The cross-motions became ripe for adjudication on May 10, 2021.

1

(Doc. 52.) That same day O'Neil filed a Motion to Defer and/or Suspend Adjudication to Permit Amendment of Complaint to Reform and Reframe this Case. (Doc. 51.)

II.   Motion to Amend Complaint

Before considering the merits of the parties' claims, the Court will first resolve O'Neil's request to defer or suspend adjudication of this case to allow him to amend the operative complaint.[1] The Court construes O'Neil's request as a motion for leave to file a second amended complaint. (Doc. 51.) Although O'Neil wishes to file a second amended complaint to reform this case by completely replacing the claims currently pled, it does not appear O'Neil intends to withdraw his pending motion for summary judgment concerning the operative complaint. O'Neil explains in his motion that his second amended complaint would "take this case completely out of NEPA", but he simultaneously filed a response to the government's cross-motion for summary judgment requesting the Court grant his motion for summary judgment in addition to allowing him to file "a new complaint that takes this case out of the Administrative Procedures Act." (Doc. 52 at 16.)

---

[1] O'Neil's "request for a live hearing" on his motion for leave to file a second amended complaint is DENIED. (Doc. 51 at 24.) The Court does not find an "evidentiary hearing" allowing O'Neil to testify based on his "environmental and political life experience" is appropriate or necessary to resolve the motion.

Procedurally, if the Court granted O'Neil's request to file a second amended complaint, which would replace the claims currently pled, the pending cross-motions for summary judgment would become moot. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (internal citation omitted). If the Court alternatively finds O'Neil should not be granted leave to amend, the pending claims and cross-motions for summary judgment would remain ripe for adjudication. For the following reasons, the Court recommends O'Neil's request for leave to amend be denied. Accordingly, the Court will resolve the pending cross-motions for summary judgment.

Federal Rule of Civil Procedure 15 governs amendment of pleadings. The Ninth Circuit has liberally applied Rule 15's instruction that leave to amend "shall be freely given when justice so requires." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (quoting Fed. R. Civ. P. 15(a)). Nevertheless, "the liberality in granting leave to amend is subject to several limitations." *Ascon*, 866 F.2d at 1160. Under Rule 15(a), the Ninth Circuit instructs courts to consider the following five factors in assessing whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint."

*Ascon*, 866 F.2d at 1160. These factors do not merit equal weight. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Federal Defendants do not challenge O'Neil's motion under each Rule 15 factor. Rather, Federal Defendants argue O'Neil's motion should be denied because amendment would be prejudicial and futile. Federal Defendants also argue O'Neil failed to comply with the Local Rules in filing his motion[2], and that leave to amend should be also be denied under Fed. R. Civ. P. 15(d) because the claims O'Neil seeks to assert are fundamentally different from the existing claims. (Doc. 54.)

A. Prejudice

Federal Defendants argue that O'Neil's motion to amend seeks to plead entirely new claims while the parties' ripe cross-motions for summary judgment on the operative complaint are pending, resulting in prejudice. O'Neil's second amended complaint would wholly replace his National Environmental Policy Act ("NEPA") claims with constitutional challenges to agency deference and NEPA's

---

[2] Federal Defendants point out that O'Neil failed to follow the Local Rules when filing his request for leave to amend his complaint. Pursuant to L.R. 15.1, "[w]hen a party moves for leave to amend or supplement a pleading, the proposed pleading must be attached to the motion as an exhibit." Although O'Neil failed to attach his proposed second amended complaint, which is alone grounds for denying his motion, the Court will nevertheless consider his arguments supporting amendment.

"hard look" doctrine. (Doc. 51 at 2-4.) O'Neil explicitly states that his second amended complaint would "take this case completely out of NEPA" and "outside of the APA", substantively altering the operative complaint and resolution of this action based on review of the administrative record and through motions for summary judgment. *See*, L.R. 16.1, Fed R. Civ. P. 26(a)(1)(B), and Doc. 38.

"Prejudice is the touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC*, 316 F.3d at 1052 (internal quotation omitted). Courts may properly deny a motion to amend based on prejudice where "the amended complaint would greatly change the parties' positions in the action, and require the assertion of new defenses." *Native Ecosystems Council v. Marten*, 2018 WL 10498569, *2 (D. Mont. May 22, 2018) (quoting *Kerr v. Zacks Invest. Research, Inc.*, 2016 WL 5464554, at *3 (S.D. Cal. Sept. 29, 2016)). A party's attempt to initiate late litigation theory changes while fully briefed substantive motions are pending also weighs against amendment. *Native Ecosystems Council*, 2018 WL 10498569, at * 2 ("The fact that substantive briefing has begun is a relevant consideration."); *Schlacter-Jones v. Gen. Tel. Co. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (considering fully briefed motion for summary judgment in prejudicial analysis under Rule 15), *overruled on other grounds*, *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001).

Here, granting O'Neil leave to amend would cause substantial prejudice to

Federal Defendants by significantly altering the litigation. O'Neil's request to file his second amended complaint comes nearly two years after filing his initial complaint and on the heels of summary judgment briefing, resolution of which would result in the disposition of this case. *See* Docs. 1, 43, & 44. *See also*, *Huffington v. Gordon, Aylworth and Tami, P.C.*, 2017 WL 3234386, *2 (D. Or. Jul. 28, 2017) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (two-year delay in seeking leave to amend combined with "tenuous new claims" supported denial of leave to amend)).

O'Neil's proposed claims raise new causes of action which would alter the nature of this case. This change is best evidenced by the current claims' reliance on the administrative record filed in this case. O'Neil's new constitutional claims would not be based upon review of the administrative record to determine whether the United States Forest Service ("USFS") complied with NEPA. The administrative record assembled by the USFS, containing over 187,000 pages, and crucial to the pending cross-motions for summary judgment, would become irrelevant. (Doc. 35.) Accordingly, because the constitutional claims O'Neil seeks to allege would alter the legal theory O'Neil has proceeded under since filing this action in August 2019, and wholly replace the pending claims, there is palpable prejudice to Federal Defendants who would be faced with fully reestablishing their defense to this action. *Compare, National Audubon Society v. Davis*, 144 F. Supp.

2d 1160, 1176 (N.D. Cal. 2000), *aff'd in part, rev'd on other grounds, and remanded sub nom.* (finding leave to amend would not result in prejudice to other parties where "proposed amendment does not alter the general legal theory alleged by plaintiffs" because it "really concerns new *arguments* and not new causes of action.") (emphasis in original), *with, Morongo*, 893 F.2d at 1079 ("The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.").

## B. Futility

Although the Court has already determined granting O'Neil leave to amend at this late stage of litigation would prejudice Federal Defendants, the Court will evaluate Federal Defendants' futility argument out of an abundance of caution.

Federal Defendants argue O'Neil's constitutional claims are futile because O'Neil does not identify a basis for this Court's jurisdiction over the claims, fails to state a claim under his *Chevron*, NEPA, and 36 C.F.R. § 219.3 theories, and cannot establish Article III standing for his constitutional claims. (Doc. 54 at 6-11.) Futility is evaluated pursuant to the Rule 12(b)(6) standard for stating a claim upon which relief can be granted. *Sleekez, LLC v. Horton*, 2017 WL 1906957, *4 (D. Mont. April 21, 2017) (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Under the 12(b)(6) standard, O'Neil's proposed amendment is

7

futile only if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Dehoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018). Even assuming O'Neil's proposed allegations are true, the Court does not find they sufficiently state a claim for relief.

O'Neil fails to provide any legal basis for challenging the constitutionality of *Chevron* deference, NEPA's "hard look" standard, or 36 C.F.R. § 219.3. First, *Chevron* deference is a judicial standard used to review an agency's interpretation of a statute it is responsible for enforcing. *Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019). Courts typically apply *Chevron* deference in cases where a plaintiff challenges an agency's interpretation of a statue or rule carrying the force of law. *Sierra Club*, 929 F.3d at 692. Accordingly, for *Chevron* deference to even be applicable in a case, an agency's interpretation of a statute or rule must be at issue.

Here, O'Neil does not seek to challenge the USFS' interpretation of a statute or rule. Rather, O'Neil seeks to challenge the constitutionality of *Chevron* deference itself. (Doc. 51.) The basis for O'Neil's constitutionality argument rests on President Biden's Executive Order 14008 on climate change. (Doc. 51 at 3-4) *See also¸* Exec. Order No. 14008, 86 Fed. Reg. 7619 (Feb. 2, 2021). O'Neil argues Executive Order 14008 makes it "impossible to continue to apply" *Chevron*

deference in environmental cases involving NEPA. (Doc. 51 at 3.) However, O'Neil provides no avenue for judicial review of his constitutional argument. This is not a situation in which O'Neil seeks review pursuant to the Administrative Procedures Act ("APA") "to challenge final agency action or inaction that allegedly violates executive orders[.]" *Western Watersheds Project v. Bureau of Land Management*, 629 F. Sup. 2d 951, 932 (D. Ariz. 2009) (citing *City of Carmel-By-The-Sea v. U.S. Dept. of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997)). O'Neil specifically rejects review under the APA. (Doc. 51 at 3.) Accordingly, O'Neil has not stated a plausible constitutional challenge to *Chevron* deference.

O'Neil's second purported constitutional challenge takes aim at NEPA's "hard look" doctrine. O'Neil contends that "the 'hard look' doctrine renders NEPA's requirements unconstitutionally void for vagueness", particularly considering Executive Order 14008's focus on urgently addressing climate change. (Doc. 51 at 3, 12.) *See* 86 Fed. Reg. 7619. NEPA's "hard look" is a doctrine of judicial review. Courts review agency compliance with NEPA through utilization of the APA's arbitrary and capricious standard "to determine whether the agency has taken a 'hard look' at the consequences of its actions [and] based [its decision] on a consideration of the relevant factors" to explain whether the proposed action may significantly affect the environment. *In Def. of Animals, Dreamcatcher Wild Horse and Burro Sanctuary v. U.S. Dept. of Int.*, 751 F.3d

9

1054, 1068 (9th Cir. 2014). As previously discussed, O'Neil disavows relying on the APA in his proposed second amended complaint – "I ask the Court again to allow me to amend and supplement my complaint outside of the APA, to discuss the [constitutional claims]." (Doc. 51 at 3.)

Since O'Neil intends to pursue his constitutional attack on the "hard look" doctrine outside of the APA, it is not clear what jurisdictional hook or recognized cause of action O'Neil relies on to state a valid claim for relief. *See The Presbyterian Church (U.S.A.) v. U.S.*, 870 F.2d 518, 525-26 (9th Cir. 1989) (APA § 702 "is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which government agencies are accountable[,]" including "unconstitutional government conduct, whether or not such conduct constituted 'agency action' in the APA sense.").

To the extent O'Neil attempts to state a constitutional claim under a "void-for-vagueness" theory, such a claim fails to meet the Rule 12(b)(6) standard. "A law is unconstitutionally vague when it fails to give ordinary people fair notice of the conduct it punishes." *Kashem v. Barr*, 941 F.3d 358, 364 (9th Cir. 2019) (internal quotations omitted). Here, O'Neil has not identified which constitutional provision his vagueness argument arises under, nor has he identified conduct proscribed by NEPA, or alleged that NEPA fails to fairly warn of such proscribed conduct. O'Neil's challenge is to the constitutionality of the "hard look" doctrine,

10

which is not a provision of NEPA, but is a judicially created standard for determining agency compliance with NEPA. O'Neil has not cited authority finding judicial review standards can be unconstitutional under the void-for-vagueness doctrine.[3] For these reasons, the Court finds O'Neil's constitutional challenge to the "hard look" doctrine is not susceptible to a vagueness challenge.

O'Neil's final proposed claim appears to challenge the constitutionality of agency judgment involved in applying the best available scientific information to the National Forest Management Act ("NFMA") planning process. (Doc. 51 at 4.) O'Neil argues NFMA's best available science regulation conflicts with Executive Order 14008 and therefore the regulation reflects "unconstitutional deference to agency judgment" and is "unconstitutionally void for vagueness." (Doc. 51 at 4, 13.) O'Neil's proposed best available science claim fails for the same reasons as his proposed *Chevron* and "hard look" claims. O'Neil does not explain what constitutional provision his challenge arises under, provides no avenue for judicial review of his argument, has not identified conduct proscribed by the challenged regulation, and has not alleged that NFMA fails to fairly warn of such proscribed conduct.

---

[3] O'Neil cites various law review articles critiquing *Chevron* deference and meaningful consideration of climate change under NEPA's framework, but the articles do not support O'Neil's contention that a standard of judicial review is subject to a vagueness challenge. (Doc. 51 at 7.)

O'Neil also fails to plausibly argue Executive Order 14008 invalidates

NFMA's best available science regulation. Executive Order 14008 does not

mention NFMA or 36 C.F.R. §219.3, and O'Neil does not provide authority for

his argument that Executive Order 14008 can modify or invalidate 36 C.F.R. §

219.3. *Utah Ass'n of Counties v. Bush*, 316 F. Supp. 2d. 1172, 1184 (D. Utah

2004) ("The President has no law-making authority . . . The use of executive

orders may be employed by the President in carrying out his constitutional

obligation to see that the laws are faithfully executed and to delegate certain of his

duties to other executive branch officials, but an executive order cannot impose

legal requirements on the executive branch that are inconsistent with the express

will of Congress.") (internal citations omitted). *See also*, *California v. Bernhardt*,

472 F. Supp. 3d 573, 605 (N.D. Cal. 2020) ("A president's Executive Order

cannot impair or otherwise affect statutory mandates imposed on [an agency] by

Congress.") (internal citation omitted).

C. Fed. R. Civ. P. 15(d) Supplemental Pleading

Federal Defendants argue that to the extent O'Neil is attempting to file a

supplemental pleading rather than an amended pleading, the Court should deny

O'Neil's request. (Doc. 54 at 11.) Rule 15(d) allows a party to file a supplemental

pleading to introduce an event that occurs after the date of the original pleading.

Fed. R. Civ. P. 15(d). O'Neil's motion for leave to amend claims could be

12

interpreted to invoke Rule 15(d) since the proposed claims incorporate Executive
Order 14008, which was executed after the date of the original filing. 86 Fed. Reg.
7619 (Feb. 2, 2021). Leave to supplement under Rule 15(d) "should be freely
given unless there is a good reason, such as futility, to the contrary". *Willoughby v.
Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996). Additionally, a
supplemental pleading "cannot be used to introduce a "separate, distinct and new
cause of action." *Planned Parenthood of Southern Arizona, v. Neely*, 130 F.3d 400,
402 (1997) (internal quotation omitted).

The Court has already found that allowing O'Neil's proposed claims to
proceed would be futile. The Court also finds O'Neil's constitutional claims have
no bearing on this Court's administrative record review of the USFS' compliance
with NEPA. Accordingly, O'Neil should not be permitted to file a supplemental
complaint based on his unrelated constitutional claims.

For the foregoing reasons, the Court finds that granting O'Neil leave to file a
second amended complaint at this stage in litigation would prove prejudicial and
futile. Denying O'Neil leave to amend will not bar him from pursuing his
constitutional claims. He may initiate a new suit alleging constitutional claims if
he desires. Accordingly, it is RECOMMENDED that O'Neil's Motion to Defer
and/or Suspend Adjudication to Permit Amendment of Complaint and to Reform
and Reframe this Case (Doc. 51) be DENIED. Having denied O'Neil's motion for

leave to amend, the Court will now resolve the parties' cross-motions for summary judgment.

III.    Cross-Motions for Summary Judgment

    A.    Factual Background

The Flathead National Forest consists of nearly 2.4 million acres (FS-045821) in the Crown of the Continent Ecosystem in Northwest Montana. (FS-045713, 045821.) Bordering Glacier National Park, British Columbia, other National Forests, and a complex of Wilderness Areas, it serves as a scenic escape to visitors, as well as a critical habitat connector to wildlife. (FS-045713-045715.) The USFS is responsible for managing the Flathead National Forest, and in compliance with the National Forest Management Act, the agency's management is guided by the Flathead National Forest Land and Resource Management Plan ("forest plan"). Pursuant to USFS regulations, the USFS proposed to revise the forest plan in 2015 and issued the final Record of Decision and an accompanying Environmental Impact Statement ("EIS") for the revised plan in 2018. (FS-045700; FS-051505-053932; FS-053933-054146; 83 Fed. Reg. 66673.)

The USFS began its revision process by issuing a notice of intent to revise the forest plan and requesting comments on the proposal from the public. (FS-044128.) After receiving over 20,000 public comments, the USFS began drafting the revised forest plan. (FS-044130.) Before issuing and finalizing the forest plan

and EIS, the USFS issued a draft EIS. Pursuant to NEPA, the USFS solicited

public review and comment on the draft EIS by providing notice of the draft EIS

and hosting public meetings. (FS-044149; FS-044156.) The USFS received

thousands of comments on the forest plan and draft EIS. (FS-054795-105763.)

After making the final EIS publicly available, the USFS held an objection period

and responded to public objections to the final EIS. (FS-044171.) Thereafter, the

final EIS was issued in November 2018, and the Record of Decision was issued in

December 2018. (FS-051505-053932; FS-053933.)

O'Neil submitted an objection to the forest plan regarding two issues: (1)

"The creation of any new wilderness areas which do not allow the public to use

pedal bicycles on the trails;" and (2) "The failure of the plan to provide for intense

enough timber harvesting, thinning and grazing to increase the albedo effect, thus

contributing to global cooling in order to save the endangered species." (FS-

056125.) After the final EIS and Record of Decision were issued, O'Neil filed this

action contending the USFS violated NEPA by failing to take a "hard look" at the

albedo effect.[4]  Construing O'Neil's complaint and motion for summary judgment

---

4 Albedo is the amount of sunlight reflected by Earth's surface. Light colored
objects have a high albedo, while dark objects have a low albedo. As the planet
warms and ice and snow melt, the Earth does not reflect as much sunlight and
consequently warms. O'Neil argues the albedo effect could be increased to help
combat climate change by thinning the forest through logging, grazing, or burning
to increase the reflectivity of the National Forest. FS-056125. *Measuring Earth's*

liberally, it appears he also challenges the USFS classification of recommended wilderness areas. (Doc. 43 at 3; Doc. 6 at 37.)

B.    Legal Background

NEPA is a procedural statute requiring government agencies to "take a hard look" at the "environmental consequences" of their actions. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). An agency adequately conducts a "hard look" "by providing a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of a proposed action. *Center for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008) (quoting *Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146, 1149 (9th Cir. 1998)). NEPA "does not mandate particular results", but "prescribes the necessary process" agencies must follow to identify and evaluate "adverse environmental effects of the proposed action." *Robertson*, 490 U.S. at 350. NEPA's procedural requirements operate to ensure informed decision-making and public participation.

NEPA requires an agency considering a "major Federal action[] significantly affecting the quality of the human environment" to complete an EIS. 42 U.S.C. § 4332(C). The EIS shall include "full and fair discussion of significant

---

*Albedo*, NASA (2014), https://earthobservatory.nasa.gov/images/84499/measuring-earths-albedo.

environmental impacts and shall inform decision makers and the public of
reasonable alternatives that would avoid or minimize adverse impacts or enhance
the quality of the human environment." 40 C.F.R. § 1502.1. "An EIS may be found
inadequate under NEPA if it does not reasonably [set] forth sufficient information
to enable the decision maker to consider the environmental factors and make a
reasoned decision." *Half Moon Bay Fishermans' Mktg. Assn. v. Carlucci*, 857 F.2d
505, 508 (9th Cir. 1988). The Court's review is complete if upon review of the
record the Court is satisfied the agency took a "hard look" at the proposed action's
environmental impacts. *Idaho Conservation League v. Mumma*, 965 F.2d 1508,
1519 (9th Cir. 1992).

Courts review agency compliance with NEPA by applying the standard of
review set forth in the Administrative Procedures Act ("APA"). *Center for
Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194
(9th Cir. 2008). The Rule 56 summary judgment standard is therefore modified in
cases requiring review of an administrative record pursuant to the APA; courts are
required to uphold agency actions unless they are "arbitrary, capricious, an abuse
of discretion, or otherwise not in accordance with law." *Western Watersheds
Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2011) (quoting 5 U.S.C. §
706(2)(A)).

The APA standard of review is deferential. Courts must refrain from

17

substituting their judgment for that of the agency and should limit their review of

the agency's action to determine whether the agency "considered the relevant

factors and articulated a rational connection between the facts found and the

choices made." *Greater Yellowstone Coalition*, 655 F.3d 1015, 1023 (9th Cir. 2011)

(citing *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140

(9th Cir. 2007)). An action is arbitrary and capricious "if the agency has relied on

factors which Congress has not intended it to consider, entirely failed to consider

an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise." *Motor Vehicle*

*Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

43 (1983). In NEPA cases, a court's "review is limited to whether an EIS took a

'hard look' at the environmental impacts of a proposed action." *Nat'l Parks &*

*Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 1072 (9th Cir. 2010).

C.     Discussion

It is necessary at the outset to discuss which of O'Neil's claims are properly

before the Court. Although O'Neil explicitly asserts a claim that the USFS did not

adequately consider the albedo effect, it appears O'Neil also challenges the USFS

classification of Recommended Wilderness Areas. (Doc. 43 at 3; Doc. 6 at 37.)

O'Neil states that the USFS "never considered reclassifying any areas to allow the

18

public more area to ride their bicycles in and the plan does not even mention 'primitive recreational areas.'" (Doc. 43 at 3.) Apart from this brief criticism, the remainder of O'Neil's brief in support of his motion for summary judgment is dedicated to his NEPA argument concerning the albedo effect. *See generally,* Doc. 43. O'Neil does not advance any legal argument regarding Recommended Wilderness Areas; he simply disagrees with the USFS' classification of such areas. O'Neil has not alleged or presented any evidence or argument allowing the Court to effectively review his claim.

Even a liberal construal of O'Neil's wilderness classification argument does not reveal legal issues for the Court to resolve. At most, the Court gathers O'Neil is aggrieved that the USFS did not consider adopting a new land status suggested by O'Neil – "primitive recreational areas" – rather than Recommended Wilderness Areas designated pursuant to the Wilderness Act.[5] The Court is not aware of any legal authority under which the USFS may alter the land

---

5 Congress passed the Wilderness Act in 1964 "to assure that an increasing population, accompanied by expanding settlement and growing mechanization, does not occupy and modify all areas within the United States and its possessions, leaving no lands designated for preservation and protection in their natural condition." *The Wilderness Society v. U.S. Fish and Wildlife Serv.*, 353 F.3d 1051, 1055 (9th Cir. 2003) (quoting 16 U.S.C. § 1131(a)). Pursuant to the Wilderness Act, the USFS is required to identify lands with wilderness characteristics and recommend them to Congress as suitable for wilderness designation. Congress ultimately determines whether the Recommended Wilderness Areas become "wilderness" as contemplated under the Wilderness Act. 16 U.S.C. § 1131.

management scheme provided under the Wilderness Act. This argument therefore

falls short of stating a claim the Court can address. Finally, to the extent O'Neil

argues the USFS did not provide public participation in designating

Recommended Wilderness Areas, the record clearly shows he is mistaken. *See,*

FS-137685; FS-053033; FS-053622; FS-053640-43.

After eliminating any ostensible Recommended Wilderness Area issue

raised by O'Neil, and construing his pleadings liberally, the Court will discuss

O'Neil's claim that the USFS did not take a hard look at the albedo effect.

a.  The USFS met its obligations under NEPA

O'Neil argues that the Federal Defendants violated NEPA by failing to take

a hard look at the direct, indirect, and cumulative impacts of the proposed actions

contained in the Revised Forest Plan for the Flathead National Forest. O'Neil

specifically targets Federal Defendants' alleged failure to take a hard look at the

impacts of the plan's management efforts on the albedo effect. (Doc. 6 at 34-37.)

Here, the USFS determined the revised forest plan was a major federal

action significantly affecting the quality of the human environment and prepared

an EIS to evaluate the plan's environmental impacts. O'Neil claims that agency's

consideration of the plan's environmental impacts was inadequate because the

agency did not thoroughly consider the albedo effect. O'Neil argues the USFS

should have taken a "hard look" at the albedo effect by considering how thinning

the forest could positively impact the effects of global warming on snowpack, water temperature, and endangered and threatened species. (Doc. 43 at 2-3.)

"NEPA does not require that an agency discusses every impact in great detail; it simply requires a reasoned evaluation of the relevant factors." *Forest Guardians v. USFS*, 495 F.3d 1162, 1172 (10th Cir. 2007). "The specific methodology appropriate in a given circumstance will depend on the variable factors peculiar to that case, and we must judge it under a rule of reason." *Bitterroot Ridge Runners Snowmobile Club v. United States Forest Service*, 329 F. Supp. 3d 1191, 1201 (D. Mont. 2018) (quoting *Association of Pub. Agency Customers, Inc. v. Bonneville Power Admin*, 126 F.3d 1158, 1188 (9th Cir. 1997)). "NEPA requires a reasonably close causal relationship between the environmental effect and the alleged cause." *Dept of Transportation v. Public Citizen*, 541 U.S. 752, 767 (2004). "Effects are reasonably foreseeable if they are sufficiently likely to occur that a person of ordinary prudence would take [them] into account in reaching a decision." *Sierra Club v. FERC*, 867 F.3d 1357, 1371 (D.C. Cir. 2017).

The Court finds the USFS took the requisite "hard look" at the forest plan's climate change impacts and adequately considered Plaintiff's concerns about the albedo effect. First, the USFS considered and responded to Plaintiff's objection regarding the albedo effect. (FS-044973.) Second, the USFS thoroughly considered the impacts of the forest plan on climate change. Third, the USFS considered

Plaintiff's proposed alternative of increased timber harvest. (FS-051519)

(Alternative D would place greater emphasis "on the use of timber harvest and

other mechanical means to achieve desired conditions. This alternative would have

the most acres suitable for timber production and available for timber harvest as

well as for motorized access.").

      First, to the extent O'Neil suggests the agency failed to take a "hard look" at

his objection concerning the albedo effect, he misunderstands NEPA's "hard look"

requirement. *Native Ecosystems Council*, 697 F.3d at 1053 ("mere fact that

[Plaintiff] disagrees with methodology does not constitute a NEPA violation.").

NEPA's "hard look" standard does not require the agency to take a "hard look" at

comments and objections received from the public; it requires the agency to take a

"hard look" at "the probable environmental consequences" of a proposed action.

*Center for Biological Diversity*, 538 F.3d at 1194. The agency is not required to

discuss every conceivable environmental consequence of its proposed action.

Rather, the agency is tasked with "providing a reasonably thorough discussion of

the significant aspects of the probable environmental consequences" of a proposed

action. *Center for Biological Diversity*, 538 F.3d at 1194. *See also Forest

Guardians*, 495 F.3d at 1172 ("NEPA does not require that an agency discuss

every impact in great detail; it simply requires a reasoned evaluation of the relevant

factors. . . Moreover, NEPA does not require that an agency give any particular

weight to environmental considerations."). O'Neil's assertion that the USFS should have more thoroughly considered the albedo effect's impact on climate change merely because he raised the issue is incorrect.

Regardless, the USFS *did* consider the albedo effect. In response to O'Neil's objection, the USFS acknowledged climate change as a significant environmental issue and referenced the forest plan's emphasis on carbon dioxide sequestration to combat climate change. (FS-044973.) The USFS additionally noted its inclusion of a climate change adaption strategy in the EIS. (FS-044973.) The USFS then specifically addressed the albedo effect and the supporting authority provided by O'Neil, *Effects of boreal forest vegetation on global climate*, Bonan, G., et al. (1992).

The USFS analyzed the Bonan article's discussion of the albedo effect but found its analysis of "the effects of removing all trees in the boreal forest as part of a sensitivity analysis" unpersuasive. (FS-044973.) The USFS also noted that "[t]he author does not conclude or advocate for increasing the albedo effect through deforestation as a tool to combat global warming." (FS-044973.) Finally, the USFS concluded that the forest plan "contains components that address climate change by promoting carbon sequestration and ecological integrity while also taking into account potential climate change effects consistent with the planning rule requirements." (FS-044973.) These statements demonstrate the USFS considered

23

and ultimately rejected Plaintiff's suggestion that the USFS increase its timber harvest to harness the albedo effect. *Native Ecosystems Council v. Weldon*, 697 F. 3d 1043, 1051 (9th Cir. 2012) ("A court generally must be 'at its most deferential' when reviewing scientific judgments and technical analyses within the agency's expertise under NEPA."); *See also,* 40 C.F.R. § 1502.23 ("Agencies shall ensure the professional integrity, including scientific integrity, of the discussions and analyses in environmental documents."). The Court finds the agency did not act arbitrarily by rejecting the Bonan article in favor of relying upon its own findings and climate change mitigation strategies.

Additionally, O'Neil's urging that the USFS consider the albedo effect is based on the effect's apparent use "as a tool to combat global warming." (FS-044973.) Climate change is an environmental consequence the USFS explicitly and thoroughly considered. (FS-044973; FS-051566-051568; FWS-051623; FS-051686; FS-05180; FS-051809 (carbon sequestration); FS-051579 (climate change and aquatic ecosystems); FS-053349-053355 (EIS climate adaption strategy).) This is also true with respect to the species O'Neil identifies as vulnerable to climate change – lynx, bull trout, and wolverine. *See, e.g.*, FS-051579-82; FS-051596; FS-051651-60 (Bull trout); Forest Plan Appendix A (Northern Rockies Lynx Management Direction); FS-052065 (consequences of alternative actions on threatened, endangered, proposed, and candidate wildlife species); FS-052094

24

(Grizzly bears, habitat, and a changing climate); FS-052148 & FS-052168 (Lynx and climate change); FS-052195 & FS-052195 (Wolverine and climate change). O'Neil's suggestion that the USFS consider increasing timber harvesting to increase the forest's albedo is also incongruous with the agency's goal of managing timber sustainability to "increase the ability of the forest to provide long-term carbon sequestering services[.]" (FS-051832.) *See also*, FS-05180 ("Carbon sequestration (storage) and associated climate regulation has been identified as a key ecosystem service provided by the Forest.") (analyzing the role of forests "in controlling the concentration of carbon dioxide in the atmosphere.").

The USFS properly identified climate change as an environmental impact and "included [its] analysis and studies on which [it] relied in the EIS, so the public was fully informed of [its] decision." *Alliance for the Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1187 (D. Mont. 2013). The agency's climate change analysis is well-reasoned, and the Court cannot say the USFS failed to meet its obligations under NEPA merely because it did not include the albedo effect in the EIS or forest plan. *Salmon River Concerned Citizens v. Robertson*, 798 F. Supp. 1434, 1442 (9th Cir. 1992) (agency did not err by failing to include all impacts or theories into its EIS, particularly those more speculative or less likely to occur).

Finally, the USFS developed an alternative to its proposed action that

addressed O'Neil's goals of increased timber harvest. Federal Defendants explain that Alternative D was developed in response to comments submitted by O'Neil and others requested increased forest thinning. Alternative D "emphasizes active vegetation management, including timber harvest, to achieve desired conditions." (FS-051552.) Alternative D includes a larger land area allocation for timber production – "[a]pproximately 20 percent of the Forest". (FS-051552.) Forest management under Alternative D would more heavily focus on "active vegetation management such as timber harvest [and] thinning." (FS-051553.) The inclusion of Alternative D in the EIS further exemplifies the USFS met its requirements under NEPA and fostered informed decision-making and public participation. "An EIS 'cannot be found wanting simply because the agency failed to include every alternative device thought conceivable by the mind of man.'" *Oregon Natural Desert Ass'n v. Bureau of Land Management*, 625 F.3d 1092, 1122 (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 551 (1978)).

IV.   CONCLUSION

For the foregoing reasons, the Court does not find the USFS failed to conduct a hard look at the environmental consequences of its proposed action. The USFS' discussion and ultimate rejection of increased forest thinning to increase the National Forest's albedo effect satisfies the rule of reason. Accordingly,

IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Cross-Motion for Summary Judgment be GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion to Defer and/or Suspend Adjudication to Permit Amendment of Complaint and to Reform and Reframe this Case be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 8th day of June, 2021.


Kathleen L. DeSoto
United States Magistrate Judge