IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JERRY O'NEIL,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>KURT STEELE, in his capacity as Forest Supervisor for the Flathead National Forest; and the UNITED STATES FOREST SERVICE, a federal agency,<br><br>　　　　　Defendants. | CV 19–140–M–DLC<br><br><br><br>ORDER |

      Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendations. (Doc. 56.) Judge DeSoto recommends that the Court deny Plaintiff Jerry O'Neil's ("Mr. O'Neil") motion for summary judgment (Doc. 43) and grant Defendant Kurt Steele and the United States Forest Service's (collectively the "United States") motion for summary judgment (Doc. 44). (Doc. 56 at 27.) Judge DeSoto also recommends that the Court deny Mr. O'Neil's Motion to Defer and/or Suspend Adjudication to Permit Amendment of Complaint to Reform and Reframe this Case. (Doc. 51.) Mr. O'Neil objects. (Doc. 62.) For the reasons stated herein, the Court will adopt Judge DeSoto's recommendation in full.

1

## BACKGROUND

Mr. O'Neil commenced this action on August 22, 2019 advancing claims under the National Environmental Policy Act ("NEPA") and the Administrative Procedures Act ("APA") challenging the legality of the forest plan governing management of the Flathead National Forest adopted in late 2018 ("Forest Plan"). (*See generally* Doc. 1.)  Mr. O'Neil subsequently filed an amended complaint advancing largely the same claims.  (*See generally* Doc. 6.)

The crux of Mr. O'Neil's operative complaint is that the United States violated NEPA and the APA in adopting the Forest Plan by failing to properly consider the albedo effect.[1]  (*Id.*)  Both Mr. O'Neil and the United States have sought summary judgment on this issue.  (Docs. 43 at 10–20; 45 at 6–29.)[2] Important for this Order, following the party's filing of cross-motions for summary

---

[1] The term "albedo effect" refers to the dynamic process by which objects "reflect light back into space."  Rebecca Robbins, *A Growing Need: Increasing Agricultural and Urban Forestation to Combat Climate Change*, 22 Vt. J. Envtl. L. 69, 78 (2021).  For purposes of this Order, suffice it to say that some argue efforts to "increase the albedo of the earth's surface," by fostering landscapes that reflect light, rather than absorb it, will help alleviate the warming effects of climate change.  J. Brent Marshall, *Geoengineering: A Promising Weapon or An Unregulated Disaster in the Fight Against Climate Change?*, 33 J. Land Use & Envtl. L. 183, 195 (2017). Under such a theory, managed deforestation may be advocated as a tool for increasing "land cover such as fields or bare ground," which absorb much less sunlight than "tree leaves." Robbins, *supra*, at 78.  The effects of increasing albedo through deforestation must, of course, be balanced against the "potential carbon-reducing power of trees," and its associated beneficial impact on our changing climate.  *Id.*

[2] The Court notes, as did Judge DeSoto, that Mr. O'Neil also makes passing mention to the United States' alleged failure to consider reclassifying certain wilderness areas to permit public bicycle use. (*Id.* at 3.).  Mr. O'Neil does not directly argue this is a NEPA or APA violation or otherwise develop this claim.  (*Id.*)  As such the Court agrees with Judge DeSoto that only Mr. O'Neil's albedo claim is properly before the Court.

judgment, Mr. O'Neil filed a motion entitled Motion to Defer and/or Suspend Adjudication to Permit Amendment of Complaint to Reform and Reframe this Case. (Doc. 51.)

Through this motion, Mr. O'Neil asks the Court to delay adjudication of the pending motions for summary judgment (Docs. 43–44) because he intends to prepare another amended complaint abandoning his pending statutory claim in favor of constitutional claims challenging NEPA and the APA directly. (*See generally* Doc. 51.) Mr. O'Neil devotes the substance of his brief to the merits of the constitutional claims he plans to advance through such an amended complaint. (*Id.* at 2–25.) Judge DeSoto construed this motion (Doc. 51) as a motion to amend under Rule 15 and recommends that this Court deny it. (Doc. 56 at 27.) Judge DeSoto also recommends that the Court grant summary judgment in favor of the United States. (*Id.*) Mr. O'Neil objects on various grounds. (Doc. 62.)

## STANDARD OF REVIEW

The level of scrutiny applied by this Court to a magistrate's findings and recommendations varies depending on whether a party exercises its right to object. *Thomas v. Arn*, 474 U.S. 140, 150–51 (1985). If a party objects to aspects of a magistrate's proposed findings and recommendations, then this Court must review the objected-to portions *de novo*. 28 U.S.C. § 636(b)(1)(C). Absent objections, however, this Court is free to review the unobjected to portion of a magistrate's

proposed findings and recommendations "under a *de novo* or any other standard." *Decker v. Berryhill*, 856 F.3d 659, 663 (9th Cir. 2017) (quoting *Thomas*, 474 U.S. at 154).

This Court's general practice is to review unobjected to portions of a magistrate's proposed findings and recommendations for clear error. *See, e.g., Demarie v. Guyer*, 2021 WL 171043 (D. Mont. 2021); *Wallway v. Schneider*, 2019 WL 95657 (D. Mont. 2019). Clear error review is "significantly deferential" and exists when the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted). Mr. O'Neil's objections are 71 pages, less attachments, and level three "general objections" along with 13 "specific objections." (*See generally* Doc. 62.)

Mr. O'Neil's first general objection contends that NEPA's best available science standard is void for vagueness. (*Id.* at 17–21.) Mr. O'Neil's second general objection argues that the "hard look" standard applied under NEPA violates the separation of powers and non-delegation doctrine. (*Id.* at 21–31.) Mr. O'Neil's third general objection claims that NEPA's public involvement provisions are illusory and fraudulent. (*Id.* at 32.) These "objections" largely mirror the constitutional arguments leveled in Mr. O'Neil's deferral motion, (Doc. 51), and for reasons outlined at length below, the Court finds no reason to pass on the

merits of these hypothetical claims.

Mr. O'Neil's 13 specific objections can be summarized as follows:

(1)   Judge DeSoto erroneously construed his deferral motion (Doc. 51) as a motion to amend;

(2)   Judge DeSoto erred in refusing to hold a hearing on his motion (Doc. 51);

(3)   any summary judgment briefing was "a waste of time;"

(4)   the administrative record was insufficient;

(5)   based on several Executive Orders issued by President Joseph R. Biden, this Court must extend, modify, or reverse the APA and NEPA pursuant to Federal Rule of Civil Procedure 11(b)(2);

(6)   Judge DeSoto ordered any prejudice she relied on in recommending that his motion (Doc. 51) be denied;

(7)   Mr. O'Neil followed all court orders;

(8)   Judge DeSoto's finding of prejudice related to Mr. O'Neil's motion (Doc. 51) was unjust and unfair;

(9)   Judge DeSoto's finding of prejudice "is a null hypothesis;"

(10)  res judicata and collateral estoppel cannot bar the filing of a new complaint;

(11)  the United States failed to consider other comparable administrative actions involving "green" roofs and its impact on the albedo effect;

(12)  Judge DeSoto erroneously concluded the United States had fulfilled its "hard look" obligation; and

(13)  Judge DeSoto mischaracterized Mr. O'Neil's purposes and motivations in bringing this suit.

(Doc. 62 at 33–71.) Really only objections 1–2, 6, and 8–9 directly contest Judge DeSoto's conclusions. Specifically, these objections take issue with Judge DeSoto's construal of Mr. O'Neil's deferral motion (Doc. 51) and recommendation that it and his motion for summary judgment be denied. All other objections either discuss the merits of Mr. O'Neil's proposed constitutional claims or have no direct bearing on Judge DeSoto's conclusions. With this in mind, the Court will next analyze the substance of Judge DeSoto's rulings.

## ANALYSIS

### I. Motion to Defer and/or Suspend Adjudication to Permit Amendment of Complaint to Reform and Reframe this Case (Doc. 51.)

As noted above, Judge DeSoto construed Mr. O'Neil's motion (Doc. 51) as seeking leave to amend his complaint under Rule 15. (Doc. 56 at 2.) Consistent with this analysis, Judge DeSoto recommends that the Court deny this motion based on considerations of prejudice and futility. (*Id.* at 4–12.) Specifically, Judge DeSoto concluded that permitting Mr. O'Neil to amend his complaint to advance entirely new claims would be prejudicial to the extent it would moot fully briefed cross-motions for summary judgment, substantively alter the nature of this case over two years after it was filed, and render a 187,000 page administrative record assembled by the United States meaningless. (*Id.* at 4–7.) Judge DeSoto also found that the constitutional claims Mr. O'Neil seeks to bring through an amended

complaint, as described in his motion, are not cognizable and their inclusion would therefore be futile. (*Id.* at 7–12.) Mr. O'Neil objects.

As an initial matter, Mr. O'Neil challenges Judge Desoto's characterization of his motion. (Doc. 62 at 33–36.) Mr. O'Neil argues that Judge DeSoto improperly passed judgment on a "non-existent" Rule 15 motion instead of his "customized" motion that really sought "defer[al] of adjudication to permit time to prepare" another amended complaint advancing several constitutional claims in lieu of his claims arising under NEPA and the APA. (*Id.*) The Court is constrained by the remedies found within the Federal Rules of Civil Procedure and finds nothing improper about Judge DeSoto's conclusion that Mr. O'Neil was seeking leave to amend his complaint pursuant to Rule 15.

Given the circumstances and stage of the litigation, it is unsurprising Judge DeSoto construed Mr. O'Neil's motion as she did. Indeed, although Mr. O'Neil argues Judge DeSoto should have not "mischaracterized" his "customized" motion, this fails to understand that "custom" motions are "not recognized by the Federal Rules of Civil Procedure," and that alone would be sufficient to deny it outright. *See United States v. Hoskins*, 2008 WL 11452348, *1 (D. Mont. 2008); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure"). Instead of occasioning that harsh result, Judge DeSoto endeavored to liberally construe Mr.

7

O'Neil's motion as one that could possibly be authorized by the procedural civil rules governing this proceeding. And, given the relief sought in Mr. O'Neil's motion, Rule 15 was the most appropriate fit.

This is because, given the posture of this case, Mr. O'Neil cannot amend his complaint unless this Court gives him permission to do so or the United States' consents. Fed. R. Civ. P. 15(a)(2) (at the stage of this litigation, "a party may amend its pleading only with the opposing party's written consent or the court's leave"). Submitting an amended complaint is precisely what his motion sought to do. (Doc. 51.) To the extent Mr. O'Neil sought any sort of deferral of adjudication, it was simply to buy him more time to draft an amended complaint. (*Id.*) Operating from this understanding of Mr. O'Neil's motion, Rule 15 fits it almost like a glove.

Moreover, the Court finds that any other construction of Mr. O'Neil's motion would be implausible. The substance of Mr. O'Neil's motion requests that Judge DeSoto "defer adjudication" of the pending motions for summary judgment solely so that he may amend his complaint to advance entirely new claims. (Doc. 51.) But as she correctly noted (Doc. 56 at 3), if Mr. O'Neil amended his complaint in such a manner, there would be no motions left to adjudicate. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). In other words, there would be nothing left to defer ruling on, and therefore affording such relief

would have no meaningful effect. Based on the foregoing, the Court finds Judge DeSoto did not error in construing Mr. O'Neil's motion as a Rule 15 motion to amend.[3]

By its very terms, Rule 15 requires this Court to freely afford Mr. O'Neil leave to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberality in favor of amendment, however, remains limited by several competing considerations. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Relevant considerations include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). As noted above, Mr. O'Neil objects to Judge DeSoto's conclusions as to futility and prejudice.

Prejudice is the most important leave to amend inquiry. *Id.* at 1052 ("Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"). Judge DeSoto's finding of prejudice is thorough and well-reasoned. This case has

---

[3] Perhaps Mr. O'Neil's deferral request could be construed as a motion to stay, but the same reasons counseling against affording him leave to amend would also justify a refusal to enter a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (outlining the relevant stay factors).

been pending for over two years and Mr. O'Neil now seeks leave not just to amend or clarify his current claims, but to instead advance new claims altogether. (Doc. 51.) These claims would be constitutional, as opposed to statutory like the current claims, and would require the United States to essentially begin defending a new action altogether. Amendment would also terminate two fully briefed dispositive motions for summary judgment. These considerations sufficiently establish prejudice and counsel against affording Mr. O'Neil leave to amend in this case. *Native Ecosystems Council v. Maren*, 2018 WL 10498569, *2 (D. Mont. 2018).

Mr. O'Neil's objections to Judge DeSoto's prejudice-conclusion fall short. Mr. O'Neil's predominant objection related to prejudice is that he mistakenly couched this action under NEPA and the APA and that any new action would likely be assigned to this Court. (Doc. 62 at 42–48.) None of these objections directly contest the prejudicial impacts identified by Judge DeSoto or alleviate them whatsoever. This Court has a duty to ensure the speedy adjudication of this case. Fed. R. Civ. P. 1. Permitting Mr. O'Neil to amend his complaint to advance entirely new claims at this late stage, despite fully briefed dispositive motions for summary judgment would contravene this principle and unduly prejudice the United States.

The Court finds this conclusion regarding prejudice forms a sufficient basis alone to deny Mr. O'Neil's motion. Accordingly, the Court declines to review

Judge DeSoto's conclusions regarding futility of amendment and Mr. O'Neil's objections discussing the merits of his proposed constitutional claims. Such objections will be overruled as moot and the Court will deny Mr. O'Neil's motion (Doc. 51) to file an amended complaint. The Court now turns its attention to the substance of Mr. O'Neil's current claims.

## II. Cross Motions for Summary Judgment.

The parties have both filed cross motions for summary judgment on the dispositive issue in this case—whether the United States violated NEPA and the APA by failing to sufficiently consider the albedo effect when adopting its governing Forest Plan. (Docs. 43 at 10–20; 45 at 6–29.) Judge DeSoto found that it had, concluding that the United States "took the requisite 'hard look' at the forest plan's climate change impacts and adequately considered" Mr. O'Neil's "concerns about the albedo effect." (Doc. 56 at 21.) Mr. O'Neil's objections on this issue largely reiterate his claim that the United States did not take the requisite "hard look." (Doc. 62 at 51–60.)[4] The Court disagrees.

"NEPA is our basic national charter for protection of the environment." *Churchill Cty v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001). NEPA obligates the

---

[4] The Court recognizes that Mr. O'Neil also contends that his proposed second amended complaint would allege a constitutional claim challenging NEPA itself. (Doc. 62 at 18–21.) In other words, at this stage it appears Mr. O'Neil agrees that he loses if NEPA, as currently interpreted, is applied, and instead argues that NEPA should be invalidated altogether.

United States to take examine the potential environmental consequences of any proposed actions "affecting the quality of the human environment." *Id.* An adequate examination is one that produces "a reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Id.* at 1071. Put another way, this Court asks whether the United States has taken a "hard look." *Id.* at 1072; *see also Center for Biological Diversity v. National Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008) (this standard encompasses the "arbitrary and capricious standard" found in the APA). The Court finds that it has.

As Judge DeSoto recognized, in adopting the Forest Plan, the United States directly responded to Mr. O'Neil's concerns regarding the albedo effect, "thoroughly considered the impacts of the forest plan on climate change," and even directly generated proposed alternatives that would have increased timber harvests (in part because of Mr. O'Neil's concerns). (Doc. 56 at 21–26.) Mr. O'Neil does not contest this and his argument can be boiled down to the notion that the United States could not possibly have taken the requisite hard look if it did not adopt his proposals regarding the albedo effect in full. This is insufficient to establish a NEPA violation. *See Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1053 (9th Cir. 2012). The Court will grant the United States summary judgment on this issue.

Accordingly, IT IS ORDERED that Mr. O'Neil's objections (Doc. 62) are